101 N.J. Super. 134 (1968)
243 A.2d 293
EDITH LAWLOR AND C. LLOYD LAWLOR, HER HUSBAND, PLAINTIFFS,
v.
CLOVERLEAF MEMORIAL PARK, INC., A CORPORATION, AND CLOVERLEAF MEMORIAL PARK ASSOCIATION, DEFENDANTS, AND THIRD PARTY PLAINTIFFS,
v.
JOSEPH LA PREE AND RAHWAY HOSPITAL, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 7, 1968.
Rehearing Denied June 7, 1968.
*138 Mr. Kenneth J. McGuire for plaintiffs (Messrs. Stein, Bliablias and Goldman, attorneys).
Mr. Stephen J. Foley for defendant Cloverleaf Memorial Park Association and Cloverleaf Memorial Park, Inc. (Messrs. Campbell, Mangini, Foley and Lee, attorneys).
Mr. H. Curtis Meanor for third-party defendant Joseph La Pree (Messrs. Lamb, Blake, Hutchinson and Dunne, attorneys).
Mr. Daniel K. Van Dorn for third-party defendant Rahway Hospital (Messrs. Mead, Gleason, Hansen and Pantages, attorneys).
HALPERN, A.J.S.C.
These are companion motions by the third-party defendants for summary judgment dismissing plaintiffs' claims as barred by the statute of limitations.
The undisputed facts are that on September 6, 1964 plaintiff Edith Lawlor allegedly fell and suffered personal injuries while visiting a gravesite at Cloverleaf Memorial Park. She was admitted that day as a patient to Rahway Hospital (hospital) and was treated there by Dr. Joseph La Pree (doctor). She was discharged from the hospital on October 17, 1964. On February 16, 1965 plaintiffs sued Cloverleaf Memorial Park, Inc. and Cloverleaf Memorial Park Association (cemetery), seeking damages for the injuries sustained. *139 Answers were filed and the case was pretried and placed on the trial calendar. On the eve of trial the original defendants were granted leave to file a third-party complaint against the hospital and the doctor for indemnification and contribution. On July 5, 1966 the third-party complaint was duly filed. On December 23, 1966 Mrs. Lawlor died.
On January 26, 1968 three motions were heard and disposed of as follows:
1. Defendant Cloverleaf Memorial Park, Inc. was granted summary judgment dismissing the complaint as to it upon the ground that it did not own, operate or maintain the area at the time decedent had fallen. Leave has not been sought to appeal this ruling to the Appellate Division and for purposes of this opinion it is no longer involved in this case.
2. Defendant Cloverleaf Memorial Park Association (cemetery) was granted summary judgment dismissing the complaint as to it because of the applicability of the Charitable Immunity Act N.J.S. 2A:53A-7 et seq. Plaintiff was granted leave to appeal this ruling by the Appellate Division of the Superior Court and is now awaiting hearing.
3. Plaintiff was granted leave to amend the complaint to (a) substitute C. Lloyd Lawlor, as executor, in place of Edith Lawlor and to sue the doctor and the hospital directly under the Survival Act for their alleged negligence and malpractice, and (b) to add an additional count against the original defendants and the third-party defendants, under the Wrongful Death Act, for allegedly causing the decedent's death.
The amended complaint was duly filed, as were the answers of the doctor and the hospital denying liability. Both third-party defendants, now direct defendants, pleaded the statute of limitations, and by these motions seek to dismiss the amended complaint.
The issues raised by these motions are:
1. Is plaintiff precluded by the statute of limitations from asserting the survival claims directly against the doctor and the hospital?
*140 2. Is the wrongful death action barred by the statute of limitations when it is brought within two years of decedent's death?

I

SURVIVAL ACTION PURSUANT TO N.J.S. 2 A:15-3 AGAINST THE DOCTOR AND HOSPITAL.
The applicable statute of limitations in a suit for personal injuries, N.J.S. 2A:14-2, provides:
"Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within two years next after the cause of any such action shall have accrued."
The cause of action is deemed to have accrued, and the two-year period commences to run, when the damage or injury occurs. Rosenau v. New Brunswick, 51 N.J. 130 (1968). Therefore, Mrs. Lawlor's cause of action for personal injuries, and Mr. Lawlor's claim for consequential damages against the third-party defendants, accrued on September 6, 1964 (date of the admission to the hospital), or at the latest, by October 17, 1964 (date of discharge and last treatment). Rex v. Hutner, 26 N.J. 489 (1958).
Plaintiffs instituted suit against the original defendants within the two-year statutory period. Based on this fact plaintiff argues that since the doctor and hospital were joined as third-party defendants by the original defendants within the two-year statutory period, such action inures to his benefit, and the statute of limitations is not a bar to his direct suit against the doctor and hospital. Plaintiff's argument is bottomed on DeSisto v. City of Linden, 80 N.J. Super. 398 (Law Div. 1963), and R.R. 4:15-3. I respectfully disagree with the De Sisto decision and hold that Mrs. Lawlor's personal injury claim, now a survival action, and Mr. Lawlor's per quod claim are barred. The holding in De Sisto is contrary to the better authority throughout the *141 country. See 3 Moore's Federal Practice, § 1409; 1A Barron & Holtzoff, § 427, and cases cited therein.
Prior to the enactment of codes of procedure the concepts of procedural joinder and substantive liability were coterminous. "Only those tort-feasors could be joined as defendants who were jointly and severally liable under the substantive law." Harper & James, The Law of Torts, § 10.1, p. 695. Today, procedural economy and trial convenience are recognized as desirable and legitimate goals. To this end R.R. 4:31 through 4:33 provide for joinder of actions and parties in one suit. To implement this objective, R.R. 4:14, dealing with third-party practice, was made a part of the overall scheme. The latter rule, however, is a mechanical aid and was never intended to create a new cause of action or new substantive rights for a plaintiff who is not even a party to the application. Schnitzer & Wildstein, New Jersey Rules Services, A IV-347, and cases cited therein; 3 Moore's Federal Practice, § 14.04, p. 501.
As a matter of practice, defendants normally bring in third-party defendants by motion, and notice thereof is only given to the parties then appearing in the cause. The party to be brought in receives no notice of the application. Seldom, if ever, will a plaintiff or any other party object to this motion because it results in bringing in a new party who may be held liable for all or part of plaintiff's possible recovery. While the court has the power to deny the motion it will do so only if it is a late application which will adversely affect the trial calendar. The merits of the third-party claim are seldom considered by the court at that time. The motion merely provides the procedural means to implead proper parties to preserve and protect substantive rights, e.g., indemnity, contribution, subrogation, etc. It further permits a defendant (here, the cemetery) to join any claim against a third party (the doctor and the hospital) arising out of the same transaction or series of transactions, so long as the third party is liable to the cemetery for all or part of the plaintiff's claim.
*142 I turn to the problem of whether the third-party defendants were properly joined by the original defendants as joint tortfeasors within the meaning of N.J.S. 2A:53A-1, for the purpose of seeking contribution on plaintiffs' claims. Unless parties act in concert or contribute concurrently to the same wrong, they are not joint tortfeasors. Their wrongs, if any, are independent and successive rather than joint. Daily v. Somberg, 28 N.J. 372 (1958); Derby v. Prewitt, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556, 559 (Ct. App. 1962); Knutsen v. Brown, 93 N.J. Super. 522, 532 (Law Div. 1966), affirmed 96 N.J. Super. 229 (App. Div. 1967). These cited cases all dealt with malpractice suits following an original injury arising from a disconnected tortious act.
The cemetery may be liable for the aggravation of the injury caused by the alleged malpractice; however, such liability is not the result of any concept of joint wrongs but of the legal principle that the original wrongdoer is responsible for the reasonably foreseeable consequences of his tortious act, including the negligence of others. Restatement, Torts 2d, §§ 457, 458; Rappaport v. Nichols, 31 N.J. 188 (1959). On the other hand, the doctor and the hospital would not be liable for the original injury resulting from the fall. Daily v. Somberg, supra. Thus, the plaintiff has two separate and distinct causes of action  one against the cemetery for negligent maintenance, and the other against the doctor or the hospital or both for alleged malpractice.
Although legal rights and obligations may exist between the cemetery, the doctor and the hospital, by way of indemnity, since they are not joint tortfeasors the doctor and the hospital were improperly impleaded by the original defendants under N.J.S. 2A:53A-1.
Plaintiff further argues that under R.R. 4:15-3 his amended complaint relates back to the date of the original filing of the complaint and, therefore, he is within the two-year statutory period. Again, I do not agree. Allowing a plaintiff, who sued within the statutory time, to amend or *143 supplement his complaint as to the original defendant properly relates back to the date of filing the original complaint  but where plaintiff attempts to add a third-party defendant to his original suit he cannot evade the bar of the statute of limitations. Tackling v. Chrysler Corp., 77 N.J. Super. 12 (Law Div. 1962). A completely new cause of action is ineligible for relation back to the date the original complaint was filed  especially after the statute of limitations has run. Band's Refuse Removal, Inc. v. Borough of Fair Lawn, 62 N.J. Super. 522, 540 (App. Div. 1960); Schnitzer & Wildstein, New Jersey Rules Service, 182 (supp. 4/27/61). The purpose in not allowing an amended pleading to relate back in these circumstances was succinctly expressed in Welsh v. Board of Education of Tewksbury Tp., 7 N.J. Super. 141, 146 (App. Div. 1950):
"The existing liberality in permitting amendments is bestowed to prevent legalistic technicalities from impeding, or obstructing, the paramount aspiration to promote substantial justice in all litigous controversies. The present progressive judicial policy is not, however, intended to afford a refuge to languid and dilatory litigants. * * * Where a statute of limitations is involved, unwarranted graciousness might well constitute an unjustifiable judicial trespass upon the legislative field."

II

DEATH ACTION, PURSUANT TO N.J.S. 2A:31-1 ET. SEQ., AGAINST THE DOCTOR, HOSPITAL AND CEMETERY
The Wrongful Death Act, now N.J.S. 2A:31-1, et seq., provides for recovery of the pecuniary loss to the surviving next of kin specified by the statute. The act is regarded as creating a new right of action on behalf of the designated beneficiaries. Harper & James, The Law of Torts, § 24.2. The survival statute, known in New Jersey as the Executors and Administrators Act (N.J.S. 2A:15-3), was intended to give executors or administrators a cause of action for trespass to the person or property of their testator *144 or intestate for his losses. Kern v. Kogan, 93 N.J. Super. 459 (Law Div. 1967). Plaintiff, by his amended complaint, is availing himself of the remedies under both statutes, and they are properly joined in the same action. Turon v. J. & L. Construction Co., 8 N.J. 543 (1952).
The doctor and the hospital (as well as the cemetery who reserved its right to raise this issue) contend that since decedent did not assert her claim against them within two years, and thereafter died, no right of action for wrongful death accrues. They cite as authority Knabe v. Hudson Bus Transportation Co., 111 N.J.L. 333 (E. & A. 1933); Coulter v. New Jersey Pulverizing Co., 11 N.J. Misc. 5 (Sup. Ct. 1932); Redick v. Rohm & Haas Co., 97 N.J. Super. 58 (Law Div. 1967). I do not agree. The Wrongful Death Act creates a new cause of action for the loss suffered by the designated beneficiaries. Such action is timely if commenced within two years following the death. Turon v. J. & L. Construction Co., supra; N.J.S. 2A:31-3.
The claim for personal injuries under N.J.S. 2A:15-3, against the doctor and hospital, as well as Mr. Lawlor's per quod claim, are not revived by the death, nor do they vest in the executor. Biglioli v. Durotest Corporation, 44 N.J. Super. 93, 105 (App. Div. 1957); Redick v. Rohm & Haas Co., supra. However, the claim for wrongful death under N.J.S. 2A:31-1, since it was commenced within two years after decedent's death, is not barred by the statute of limitations. Kotkin v. Caprio, 65 N.J. Super. 453 certification denied 34 N.J. 470 (App. Div. 1961).
To summarize, the motions by the doctor and the hospital for summary judgment on the claims under the Survival Act are granted; the motions for summary judgment under the Wrongful Death Act are denied.

On motion for reargument
These motions by the third-party defendants, La Pree and Rahway Hospital, seek to have the court reconsider its *145 decision denying their previous motions for summary judgment on plaintiff's wrongful death suit.
The thrust of their reargument is that since the decedent died more than two years after the alleged wrong was committed, without having instituted a suit against them, the action under the Wrongful Death Act is barred by the statute of limitations. This issue was decided adversely to the movants' contentions in Kotkin v. Caprio, 65 N.J. Super. 453 (App. Div. 1961), certification denied 34 N.J. 470 (1961), and that decision is dispositive of these motions. In Kotkin the Appellate Division reviewed the earlier cases, relied on by these movants, and adopted the majority rule recognized throughout the country (including New Jersey) that a wrongful death action may be instituted within two years of decedent's death. See Annotations in 174 A.L.R. 815 (1948) and 97 A.L.R.2d 1151 (1964); 16 Am. Jur. § 167, p. 113; Harper & James, The Law of Torts, § 24.7, p. 1295 et seq.
In Kotkin an accident had occurred on May 2, 1957 and the decedent died as a result thereof on June 13, 1957. No suit was started by the decedent during her lifetime. Her representatives started suit on May 29, 1959, more than two years after the accident, but within two years of her death. Although the complaint was inartistically drawn the court ultimately treated it as a two count complaint seeking relief under the Survival and the Wrongful Death Acts. The former was held barred by the statute of limitations, and the latter timely. The movants argue that Kotkin is inapplicable because there the decedent had died within six weeks of the accident, when the statute of limitations had not yet expired. Such a distinction does violence to the provisions of the Wrongful Death Act, N.J.S. 2A:31-1 to 6, and is contrary to the holding in Kotkin. The cause of action created by the Wrongful Death Act is neither dependent upon the decedent instituting a timely suit during her lifetime nor her dying within two years of the wrongful act. To *146 hold otherwise would mean that the wrongful death action may be lost before it has ever accrued.
Whether a wrongful death action is maintainable is governed by the statute which created it. N.J.S. 2A:31-1 provides:
"When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime."
N.J.S. 2A:31-2 requires the action to be brought in the name of an administrator ad prosequendum or a fiduciary who qualified under decedent's will.
N.J.S. 2A:31-3 provides:
"Every action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter."
N.J.S. 2A:31-4 creates the class of persons for whose exclusive benefit the amount recovered shall be distributed in amounts determined by the court without a jury.
N.J.S. 2A:31-5 requires the jury to assess such damages as are "* * * fair and just with reference to the pecuniary injuries resulting from such death to the persons entitled * * *."
N.J.S. 2A:31-6 prohibits the proceeds of any settlement or judgment to be paid to the administrator ad prosequendum but requires payment to the general administrator of decedent's estate.
In interpreting N.J.S. 2A:31-1 to 6, consideration must be given to the legislative purpose for its passage viewing it as a whole to harmonize all of its integral parts. Thus viewed, it becomes evident that the Wrongful Death Act creates a new cause of action for the exclusive benefit *147 of the persons specified in the statute. Any amount recovered is distributed to the statutory beneficiaries free of any claims against the decedent or his estate. Soden v. Trenton and Mercer County Traction Corporation, 101 N.J.L. 393, 398 (E. & A. 1925). In Soden the legislative history of the Wrongful Death Act is fully set forth. To recover under said act the plaintiff must: (a) prove that the death was caused by the wrongful or negligent act of the wrongdoer; (b) withstand any defense which could have been raised against the decedent such as contributory negligence; (c) withstand a defense that the cause of action has been disposed of by judgment or voluntary settlement during decedent's lifetime; (d) commence the action within two years after decedent's death; and (e) prove there were surviving statutory beneficiaries who suffered pecuniary loss resulting from decedent's death. In construing the language used in N.J.S. 2A:31-1, "such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury," it is clear that the Legislature was merely referring to the "merits" of the cause of action and it was not conditioning the right to sue on decedent's having brought a timely suit or dying within two years of the alleged wrongful act. This becomes clear if the words "on the merits" were inserted after the word "action" in the quote last above.
A cause of action under the Wrongful Death Act must not be confused with one under the Survival Act, N.J.S. 2A:15-3, which latter statute preserves to the decedent's estate any cause of action the decedent may have had against a wrongdoer for his personal injuries and damage. Any amount recovered from such suit becomes a part of the general assets of the decedent's estate. The action must be brought by the executor or administrator, as the case may be, and must be commenced within two years of the alleged wrongful act. N.J.S. 2A:14-2. If the decedent commences the action during his lifetime, and dies before the case is completed, the action survives for the benefit of his estate. So too, if he dies within two years of the alleged wrongful *148 act without having started suit, his executor or administrator may bring such action provided it is commenced within two years of the alleged wrongful act. Therefore, under the Survival Act, an action must be commenced by the decedent, or his estate, within two years of the alleged wrongful act. However, an action under the Wrongful Death Act, is one to recover for the death caused by a wrongful act which arises at the time of decedent's death and may be commenced within two years thereof. Justice Heher recognized this distinction in Turon v. J. & L. Construction Co., 8 N.J. 543 (1952) when he said:
"The right of action thus given [under the Wrongful Death Act] is not grounded in the injury sustained by the estate, but rather in the loss suffered by the statutory beneficiaries. As said, it is in no sense the enforcement of an action by survival. The damages which the deceased might have had had he lived are not includable in the award; * * * A cause of action is created in favor of the persons thus designated, * * *." (at p. 558)
In conclusion, I hold that an action under the Wrongful Death Act accrues, or commences to run, from the date of decedent's death. The motions to reconsider are denied.